THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFF IN ERROR, v. CHARLES RUSS, ADMINISTRATOR, DEFENDANT IN ERROR.

A notice, with respect to throwing United States mail-bags off the moving trains of the Pennsylvania Railroad Company, uses this language: "It must be distinctly understood, however, that this does not in any way relieve baggagemasters and mail agents from using all possible precautions against liability of injuring anyone in throwing off mail." *Held*, that on trains carrying a mail agent, the failure of baggagemasters to observe how the mail agent performed his duty did not, under this notice, make the railroad liable to one injured by a mail-bag carelessly thrown by the United States official.

On error to the Supreme Court.

For the plaintiff in error, *William S. Gummere.*

On the 28th day of October, A. D. 1892, Henry Papenburg, the intestate of the defendant in error, left his home to go to the station of the Pennsylvania Railroad Company, in Rahway, for the purpose of taking a train to New York.

He walked down Irving street to the tracks of the Pennsylvania railroad, crossed over those tracks, and then turning towards the west, he walked along a beaten pathway running across a triangular piece of ground, belonging to the railroad company and near to and parallel with said railroad tracks, to Cherry street.

An express train was at that time approaching on its way to New York, to which there was a mail car attached; as the mail car reached the centre of Cherry street, the mail agent thereon threw out a mail-bag; Mr. Papenburg at that time had reached a point within four or five feet of Cherry street; the bag being thrown in his direction struck him with such force as to throw him down violently, causing a fracture of his skull, from which he died in a few hours.

To recover for his death this suit is brought.

The declaration in the case, in its first count, alleges that this mail-bag was thrown from the train by the plaintiff in error, its servant or agents. The second count alleges that it was thrown from said train by some person or persons thereon being, with the knowledge and consent of the plaintiff in error.

It was conclusively proved on the trial of the case, by the testimony of Mr. Richard C. Jackson, superintendent of the railway mail service, that the person who threw off this mail-bag was not an employe of the plaintiff in error, but was a postal clerk in the employ of the United States government.

This testimony, which was uncontradicted, disposed of the first count, and, indeed, the trial judge, in his charge to the jury, told them that this mail agent was in the employ of

the United States government, and not in the employment of the plaintiff in error.

The case went to the jury on the second count in the declaration, which was that this mail-bag was thrown out by the mail agent with the knowledge and consent of the plaintiff in error.

It is respectfully submitted that there is nothing in the case to justify a recovery under this count.

The testimony of Mr. Jackson, and the printed instructions issued by him, show that it was the duty of this mail agent to put off this mail-bag at the foot of the mail crane at Rahway.

This mail crane stood upon the triangular piece of ground above referred to, and between the beaten path upon which Papenburg was walking and the tracks of the plaintiff in error.

It may be admitted that this place for putting off mail from eastbound trains, and which was selected by the plaintiff in error, was not an entirely safe one, by reason of the fact that there was a pathway across the triangle, used by the public, which ran near to the crane; and that it was negligence on its part not to select a place which was entirely safe.

But this negligence on the part of the plaintiff in error was not the cause of the injury which resulted in Papenburg's death, and had no connection with it; and therefore cannot be made the basis of the verdict in this case.

At the time he was struck Papenburg had passed by the mail crane, and had almost reached Cherry street. The mail agent, instead of obeying his instructions, and throwing off the mail-bag at the mail crane, disobeyed them absolutely, and threw off the bag at the middle of a public street crossing, at a point eighty-seven feet distant westwardly from the crane. If the mail agent had obeyed orders, and had put off the mail-bag at the point where he was directed, Mr. Papenburg would to-day be walking the streets of Rahway alive and well.

It was the negligent and disobedient act of this agent, who

was in no way the agent or servant of the plaintiff in error, but was an employe of the United States government, which was the sole cause of this accident.

That the bag was thrown off at the centre of Cherry street crossing is undisputed, and is proved by the testimony of George Beckler, a witness of plaintiff, and by the testimony of Michael Boyce, witness of defendant; that the centre of Cherry street is eighty-seven feet from the mail crane is proved by the testimony of L. F. Bodine, the draughtsman of the map.

Under what theory, then, can the plaintiff in error be held responsible for this accident? What negligence was it guilty of?

The trial judge seems to have thought that there was some duty resting upon the baggagemaster of the train to observe how the mail-bag was thrown off, by reason of the notice signed by Superintendent Crawford, and that such duty had been neglected by the baggagemaster, and he charged the jury that by that notice "it was made the duty of the baggagemasters, who are railroad employes, to use all possible precaution against injury by throwing off the mails, * * * and also to observe how the mails were thrown off, and any neglect on their part, by which injury was done, was the neglect of the defendant company."

The notice reads as follows:

"Baggage Masters and Mail Agents are hereby instructed to throw off mail bags at stations at the points designated in the following statement. It must be distinctly understood, however, that this does not in any way relieve Baggage Masters and Mail Agents from using all possible precaution against liability of injuring anyone in throwing off mail, etc.

"JOSEPH CRAWFORD,

"*Superintendent.*"

There is absolutely nothing in this language to warrant the conclusion of the judge that this notice "makes it the duty of the baggagemasters to observe how the mails were

thrown off." The notice directs baggagemasters, as well as mail agents, to throw off mail-bags, &c. This does not mean that the baggagemaster is to help the mail agent to take up the mail-bag and throw it off. When there is a mail agent on a train the baggagemaster has nothing to do with the mail. The notice is directed to baggagemasters as well as mail agents, because on some of the local trains carrying local mails there is no regular mail agent, and in those cases the baggagemaster acts in the double capacity of baggagemaster to the company and mail agent to the government. A careful reading of the notice itself clearly shows that it will not bear the construction put upon it by the trial judge, and that his charge in this respect was unwarranted.

It was insisted on the trial of the cause below, and was apparently considered by the trial judge, that, because it appeared in evidence that mail agents frequently threw off mail-bags at the Cherry street crossing, instead of at the mail crane, the jury might infer that this was done with the knowledge of the plaintiff in error ; and that it was negligent in failing to prohibit the practice, and that such negligence rendered it liable for the injury which resulted in the death of Papenburg. *Carpenter* v. *Baltimore and Ohio Railroad Co.*, 97 *N. Y.* 494, is claimed to support this position.

In fact, it fails entirely to do so. In that case the mail-bag was thrown by the mail agent upon the station platform. From the evidence " it appeared that this had been for a long time the customary method of discharging mail-bags from postal cars at that place."

There was no proof in the case cited that the defendant company had provided any other place for throwing off the mail, or issued any instructions to throw off the mail at a place other than the station platform.

This is the vital distinction between the Carpenter case and the one now before the court. If the evidence in this case showed that the mail was usually thrown off at the centre of Cherry street, and nothing more, it would of course be the natural inference that it was done with the knowledge

and consent of the railroad company; but, when it appears that the railroad company, by its superintendent, issued a notice to the mail agents traveling over its road to throw off mail-bags at the mail crane in Rahway, and that the government superintendent of the railway mail service issued an order to such agents directing them to put off the mail at that crane, I fail to see how the mere fact that such mail agents frequently disregarded this notice and disobeyed this order warrants the conclusion that they did so with the knowledge of the plaintiff in error.

It may be said that this violation of the order of the railway mail superintendent, by these mail agents, was known to some of the employes of the railroad company, notably to the gateman, Michael Boyce, who testified on his cross-examination that he never had seen a mail-bag thrown where the mail crane was; that half the time it was thrown on the street.

But there is nothing in the case to show that Boyce or any other employe who was cognizant of the fact that the mail agents were accustomed to throw these bags upon the street, knew that the mail crane was the proper place to throw them, and that these agents were violating orders in throwing them on the street. If they did not know that it was a violation of orders there was no reason why they should report such action to the railroad company.

Moreover, even if this gateman or any other employe around the station at Rahway had knowledge that this conduct of the mail agents was contrary to their instructions, that does not bind the company or affect them with notice.

Notice to an agent is notice to the principal only when it is the duty of the agent to communicate it to his principal in the proper discharge of his duty. *Dock* v. *Elizabethtown Steam Manufacturing Co.*, 5 *Vroom* 317.

There was no duty resting on this gateman to communicate to his employer his knowledge that these mail agents were violating orders, and therefore his knowledge does not affect the company.

I submit that there is nothing in this case to warrant the conclusion that the plaintiff in error knew that it was the habit to frequently throw off these mail-bags at the Cherry street crossing, and that therefore it is not responsible for the injury done to Mr. Papenburg; and that therefore the judgment below should be set aside and a new trial ordered.

For the defendant in error, *Richard V. Lindabury.*

Error is alleged in this case in two particulars—

*First.* In the refusal of the court to direct a verdict for the defendant, on the ground that the defendant was not itself responsible for the negligence of the mail agent which resulted in the death of defendant's intestate.

*Second.* That the deceased contributed by his own negligence to the injury which resulted in his death.

On the question of the responsibility of the defendant for the negligent act of the mail agent, it appeared—

1. That the company had for years allowed the public to pass over its ground along the path on which the deceased was traveling at the time he was killed; that, in fact, the company had by its acts invited passengers going to and from its station to use this path.

2. That the path was parallel with the railroad track, and about fifteen feet therefrom.

3. That the company had erected a mail crane on the strip of land crossed by this path, from three to five feet from the railroad track, and ten or twelve feet from the path.

4. That it had issued an order requiring baggagemasters and mail agents to throw off mail-bags at this crane.

5. That in violation of this order a mail-bag was thrown from a passing train, by the mail agent in charge of the mail thereon, at a point near the centre of Cherry street, distant eighty-five feet from the mail crane, and that the bag struck and killed Papenburg while on the gravel path near to the edge of Cherry street, and about seventy feet from the mail crane.

6. That the bag was thrown by a mail agent in the employ

of the United States government, but that the railroad company was carrying the mail and agent under a contract with the government, voluntarily entered into by it in pursuit of the business for which it was chartered.

7. That it had been the practice of the mail agent to throw off the mail-bags at this point and in this way for a long time.

8. That the company had especially enjoined its baggage-masters to use "all possible precaution against liability of injuring anyone in throwing off mail."

Under these circumstances I submit—

*First.* That the deceased was rightfully in the place where he was killed, although upon land belonging to the defendant company. *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein,* 23 *Vroom* 169 ; *Phillips* v. *Library Co.,* 26 *Id.* 307.

*Second.* That the railroad company is responsible for the negligent act by which Papenburg met his death.

Speaking of the liability of one for the negligence of another, Judge Cooley, in his *Law of Torts, p.* 532, says:

"It must come from the fact that one person has placed himself under another's direction and control in a manner that should impose on the latter the obligation to protect third persons against injuries from the acts or omissions of his subordinate. It could not at all depend on whether the master was to pay anything nor whether the service was permanent or temporary. His control of the action of the other is the important circumstance, and the particulars of his arrangement are immaterial."

In *Clapp* v. *Kemp,* 122 *Mass.* 481, the facts were as follows : The defendant made a contract with a coal dealer, by which the latter was to furnish him coal, delivered in the cellar of his store, without any trouble to the defendant. When the teamster, an employe of the coal dealer, came with his first load, one of the clerks in the store of the defendant showed him down to the coal-bin, and how and where the cover of the coal-bin was fastened. With this exception, no

one connected with the store had anything to do with putting
in the coal, nor in any way directed or dictated to or con-
trolled the teamster in the delivery thereof.   The injuries to
plaintiff happened while the teamster was delivering another
load of coal, some two months later, and through his negli-
gence either in removing the coal cover or in not properly
guarding the coal-hole while he was putting in the coal.   The·
defendants contended that the teamster was not their servant,
and so the plaintiff could not recover against them, and asked
the judge so to instruct the jury.   This he refused to do, but
gave the following charge, which was sustained on appeal :
" The defendants, if they were occupants of the store, would
not be liable for the negligence or carelessness of the teamster
if, as the servant of Armor [the coal dealer], he had the exclu-
sive possession or control of the premises so far as was neces-
sary to enable him to deliver the coal.   But if the jury are·
satisfied that the defendants were, at the time, the occupants
of the store, and, as such occupants, had the right to direct.
or control the mode or manner of said delivery, then the
teamster would be the servant of the defendants, so as to·
render them liable for injuries occasioned by his negligence
or carelessness in the delivery of the coal."

In *Buchanan* v. *Chicago, &c., Railroad Co., 39 N. W. Rep.*
663, the facts were briefly these : Three railroad companies·
had their tracks on the same street.   By agreement, one paid
the flagman at one crossing, another paid the flagman at the·
next crossing, and so on.   Held, that each of these flagmen·
should be deemed the servant of each company, in the sense·
that a company which did not hire him would be liable for·
his negligence.

In *Linnehan* v. *Rollins*, 137 *Mass.* 123, 125, the injury to·
the plaintiff was caused by the negligence of the workmen
employed by one Elston, who had a written contract with the·
defendants by which he was to do some work subject to their
control.   The charge to the jury, which was excepted to
and sustained on appeal, was in part as follows : " You will
observe that, although there has been evidence introduced

upon the one side and the other as to the actual control which the trustees, through one of their number, exercised over the work, and that is all proper and competent evidence for you in considering the matter, yet that the absolute test is not the exercise of power of control, but the right to exercise power of control. If, for instance, there was nothing in this case but this contract, and there was no question that the parties were acting under it, if that is the view you take of it, and that the injury was occasioned by the negligence of Elston, then, although the trustees should be across the Atlantic, nevertheless, under the instructions I give you, if they retained the power to control and direct the work, they would be liable, because it is the possession of the right of interference, the right of control, that puts a party upon the duty of seeing that the person who stands in that relation does his duty properly."

In *Carpenter* v. *Boston and Albany Railroad Co.*, 97 *N. Y.* 494, the facts were very similar to those in the present case. The plaintiff was waiting at the defendant's depot for the purpose of taking a train which was approaching. A postal car was attached to the train, and as it passed the plaintiff the postal clerk threw out a loaded mail-bag, which struck and injured the plaintiff. Held, "The fact that the postal agent was not in defendant's employ did not relieve it from liability, and that the circumstances authorized a finding of negligence upon its part; that it was not necessary in order to charge defendant with the duty of care and vigilance, that on a former occasion a like injury had happened." Judge Danforth, delivering the opinion of the court, said: "It was proven by uncontradicted evidence that this method of discharging mail from the postal car upon the platform provided for passengers, and while they were upon it and exposed to injury, had prevailed for a long time, under circumstances from which notice to the defendant might fairly be implied, and with the actual knowledge of the defendant's agents, in whose presence the act was frequently, if not daily, performed, and, so far as appears, without the slightest objec-

tion on their part. They were, therefore, chargeable with notice that the mail-bag was likely to be thrown off in the same manner and under the same circumstances at any arrival of a postal car. By this knowledge the defendant was brought fairly within the rule which enjoins care, not only on the part of itself and its servants, but also like care in preventing injury from the careless or wrongful act of any other person whom it permits to come upon its premises. The occupants of the postal car are no exceptions to this rule. They were not strangers or uninvited. They came under a contract voluntarily made by the defendant, and which secured the carriage and delivery of the mails upon such conditions as it imposes or acceded to. Its police power extended over the persons employed in it, while they were on the defendant's tracks or at its stations, certainly not to interrupt them in the discharge of their official duties, but, so far as practicable, to prevent injury to those for whose safety it was bound to provide."

In *Snow* v. *Fitchburg Railroad Co.*, 136 *Mass.* 552, the facts were practically the same as those in the case just cited, and a verdict for the plaintiff was sustained, Justice Colburn saying: "There was evidence in the case tending to show that mail-bags had not unfrequently been thrown from this car in such a way as to strike upon the platform where the plaintiff stood; and if this evidence was believed, the court was justified in inferring that the defendant knew, or, in the exercise of proper care, ought to have known this. It was within the power of the defendant to prevent this practice of throwing out mail-bags, if in no other way, by withholding the use of the car or by stopping the train at the station. The case presented is unlike that of the act of a passenger, which the defendant had no reason to anticipate or power to prevent." See, also, *Old Colony Railroad Co.* v. *Slavens*, 148 *Mass.* 367; 2 *Shearm. & R. Negl.*, § 459.

Lastly, I submit that the deceased was not guilty of contributory negligence. There is not the slightest evidence to show that he ever saw the mail-bag thrown across the path

upon which he was struck. On one occasion, when it was attempted to be proved that he had seen it so thrown, it was thrown in the ditch along the railroad track at the foot of the mail crane. Upon the other occasion, when he is said to have noticed this dangerous practice, the mail-bag was thrown among the passengers upon the platform at the railroad station, over one hundred feet from the spot where he was killed.

I submit that there is no error in the record, and that the judgment should be affirmed.

The opinion of the court was delivered by

GARRISON, J. This is an action against the Pennsylvania Railroad Company, for causing the death of Henry Papenburg, the plaintiff's intestate. Papenburg was struck and killed by a United States mail-bag thrown from the mail car attached to one of defendant's trains. The bag was thrown from the postal car, not by one of the defendant's servants, but by the mail agent of the United States government. The place where the bag was thrown from the train was about the centre of Cherry street, in the city of Rahway. Papenburg was approaching Cherry street across a triangle of ground belonging to the railroad company, upon a beaten track lying near to and parallel with the railroad tracks and used by the public in gaining access to the station. About the middle of this triangle, alongside the track, a mail crane had been erected, from which moving trains might take on mail-bags. The foot of this crane was the spot designated for throwing off mail-bags. In order that the bags thrown from rapidly-moving trains should fall at the foot of this crane, it was necessary to throw them off before the mail car had actually reached the crane. Upon the occasion in question the United States mail agent threw off the bag some eighty feet before reaching the crane, causing thereby the fatal accident to Papenburg, who was lawfully at the place where he was struck and killed.

In this situation of affairs two interesting questions arose

and were to some extent discussed—*first,* the liability of the defendant for the acts of the servant of the United States government, and *second,* the negligence of the defendant in designating for a performance of this character a spot so near to a traveled pathway over its own property, that, in the natural course of things, injury might befall one lawfully using this thoroughfare.

These questions are, however, not presented by the case with which we have to deal, for the reason that the negligence of the company was put by the trial court upon another and different ground, in which aspect alone it is before us upon a specific exception on which error has been assigned.

The ground of negligence thus alluded to is that it was the duty of the baggagemasters of the defendant company to observe how the mails were thrown off and to use precautions against injury therefrom, and in this connection the jury was told that any neglect of this duty by the baggagemaster by which injury arose was the neglect of the company. Inasmuch as there was no attempt to prove that the baggagemaster of the train in question had supervised the throwing off of the mail-bag by which Papenburg was killed, it is clear that the defendant was guilty of neglect of its duty in this respect if that duty was correctly stated in this instruction. The basis of the court's charge upon this point was a printed notice in evidence, designating the places for the delivery of mail from moving trains. This notice was signed by Joseph Crawford, superintendent of the defendant company, and also by R. C. Jackson, superintendent of the United States mail service. It reads as follows: "General Notice to Passenger Trainmen and Mail Agents. Baggagemasters and mail agents are hereby instructed to throw off mail-bags at the points designated in the following statement. It must be distinctly understood, however, that this does not in any way relieve baggagemasters and mail agents from using all possible precaution against liability of injuring anyone in throwing off mail."

The instruction of the trial judge upon this branch of the

case was as follows: "I call your attention to the notice given by Crawford, the superintendent of the railroad company, to the trainmen on passenger cars as well as to the mail agents. He expressly made it the duty of the baggagemasters, who are railroad employes, to use all possible precautions against injury by throwing off the mails. It was thus made the duty of these baggagemasters to observe how the mails were thrown off, and any neglect on their part by which injury was done was the neglect of the defendant company."

The conclusion I have reached is that the learned judge misconceived the meaning of this notice, and, in consequence of such misconception, placed the liability of the defendant upon an untenable ground. The jury was, in effect, told that when mails were thrown from moving trains, whether by trainmen or by mail agents, it was the duty of the railroad baggagemasters to observe the operation with the view of averting injury, and that their failure in this respect would be the neglect of the railroad company. Applied to the case of a mail-bag thrown from a mail car by the United States official in charge thereof, I do not think that this notice contemplated any oversight or interference by the ordinary trainmen or that, properly interpreted, such a direction will be found in it. In the course of the case it was shown that some trains carried mail cars in charge of mail agents, while upon others the duty of handling the mails was left to the railroad employes. The natural meaning of the joint notice of the federal government and the railroad company, in view of this fact, is not that baggagemasters on trains that carried United States mail agents should oversee the latter, but that whosesoever duty it was to throw off the mail—mail agents from mail cars, baggagemasters from baggage cars—should observe care and exercise all possible precautions against injury.

The injurious effect of the court's instructions must at once appear, for it is admitted that, in the case in hand, the baggagemaster of the defendant did not oversee the United States. mail agent who threw off the bag. This omission in *itself* would, under the charge of the court, be plenary proof of

negligence, and upon this ground of error, we must, on this argument, assume that the jury rested its verdict. Deeming, as we do, that this instruction was erroneous and considering the question of contributory negligence as one that was properly left to the jury, there must be a *venire de novo.*

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, MAGIE, REED, BOGERT, BROWN, KRUEGER, SIMS, SMITH. 14.